JS-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5208 | **DATE** | 11/14/2001 |
| **CASE TITLE** | MARLON POWELL vs. DONALD RUMSFELD | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: there is no genuine issue of material fact on the Title VII claims of gender discrimination and retaliation that plaintiff Marlon Powell asserts against defendant Donald Rumsfeld. Defendant's motion for summary judgment is, therefore, granted. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | NOV 16 2001 date docketed | 16 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TBK courtroom deputy's initials | | FILED FOR DOCKETING 01 NOV 15 AM 11:27  date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

Minute Order Form (06/97)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARLON POWELL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DONALD RUMSFELD, Secretary, )<br>Department of Defense, )<br>)<br>Defendant. ) | No. 00 C 5208<br>Paul E. Plunkett, Senior Judge<br><br>**DOCKETED**<br>NOV 1 6 2001 |

## MEMORANDUM OPINION AND ORDER

Plaintiff has sued the Department of Defense ("DOD") for its alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Defendant has filed a Federal Rule of Civil Procedure ("Rule") 56(c) motion for summary judgment. For the reasons set forth below, the motion is granted.

### Facts

Plaintiff has been a DOD employee since 1980. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 4.) In 1993, he became a Procurement Technician in the Small Business Office of the DOD's Defense Logistics Agency, an agency that is responsible for administering government contracts for defense equipment. (Id. ¶¶ 1, 4.) Plaintiff's duties included negotiating contract modifications, reviewing contracts for delivery and communicating with contractors. (Id. ¶ 7.) Plaintiff's direct supervisor was Gregory Wynne. (Id. ¶ 8.)

Until 1997, when all employees in the Small Business Office were placed on a calendar-year review schedule, plaintiff's review period was April 1 through March 31. (Id. ¶ 20.) For the period April 1, 1995 to March 31, 1996 plaintiff received a "Highly Successful" performance rating and a time off award. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 71.) Wynne prepared the rating, which said nothing negative about plaintiff's communication skills. (Def.'s LR 56.1(a)(3) Stmt., Vol. II at 32.)

Because of the change in the schedule, plaintiff was not reviewed for the period April 1, 1996 to December 31, 1996, but he received two performance awards during that period. (Def.'s Resp. Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 72.)

Sometime before 1997, however, Wynne says he began having problems with plaintiff's work. Wynne says that plaintiff sent letters to contractors with incomplete sentences and misspelled words and that he sent letters out without Wynne's review, contrary to office policy. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 10-12.) On April 7, 1997, the parties agree, Wynne counseled plaintiff about the problems with his letters. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 15.) Wynne says that he talked to plaintiff about the misspelled words and the incomplete sentences, his failure to submit the letters for review before sending them out and his failure to include a cover letter with certain correspondence. (Def.'s LR 56.1(a)(3) Stmt., Vol II at 19.) Plaintiff says Wynne addressed only the cover letter issue. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 15.)

According to Wynne, about the same time that his written work started to suffer, plaintiff started to misuse break and phone time. (Def.'s LR 56.1(a)(3) Stmt. ¶ 16.) Wynne says that he counseled plaintiff about these problems to no avail. (Id.) Plaintiff says no such counseling occurred. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 16.)

On October 30, 1997, DOD announced a vacancy in a Procurement Analyst position in the Small Business Office. (Id. ¶ 21.) The first duty of the job was to "respond to inquiries and requests for information from firms covered by the Small and Disadvantaged Business Utilization Program on Government acquisition matters." (Id. ¶ 22.) Plaintiff applied for the position and, along with six others, was found generally qualified for it. (Id. ¶¶ 26-28.) Wynne, who was responsible for making the hiring decision, interviewed all seven candidates. (Id. ¶ 29.) Wynne's first choice, Sylvester Herring, declined the offer, so the job went to his second choice, Micole Stephens, a woman. (Id. ¶ 33.)

On or before February 17, 1998, Wynne completed plaintiff's review for the period January 1, 1997 through December 31, 1997. (Id. ¶ 19[1]; Def.'s LR 56.1(a)(3) Stmt., Vol. II at 31.) Wynne gave plaintiff a "Minimally Acceptable" rating. (Def.'s LR 56.1(a)(3) Stmt., Vol. II at 31.)

On February 18, 1998, plaintiff filed an EEO complaint claiming that Wynne had not hired him for the Procurement Analyst job because of his gender. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 40.)

Sometime in 1997, plaintiff requested a transfer to DOD's Northrup Grumman facility. (Id. ¶¶ 48-49.) In May 1998, plaintiff was told that his request would be granted. (Id. ¶ 50.)

On June 2, 1998, plaintiff filed a second EEO complaint, claiming that Wynne retaliated against him for his first EEO complaint by giving him a low performance rating for 1997. (Id. ¶ 41.)

On June 16, 1998, plaintiff says, he was physically assaulted by Wynne. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 84.)

On June 22, 1998, plaintiff was transferred to the Northrup Grumman facility. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 51.)

---

[1]Plaintiff denies the substance of the rating, not the date that Wynne prepared it.

On September 8, 1998, plaintiff filed a third EEO complaint alleging that Wynne retaliated against him by denying his transfer to Northrup Grumman and by physically assaulting him. (Id. ¶ 47.)

In this suit, plaintiff contends that Wynne rejected him for the Procurement Analyst position because of his gender and, when plaintiff complained about the discrimination, Wynne retaliated against him by giving him a poor performance rating for 1997, denying his transfer to Northrup Grumman and physically assaulting him.

## The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. Michas v. Health Cost Controls of Illinois, Inc., 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. Id.

## Discussion

Plaintiff's first claim is that Wynne discriminated against him on the basis of his gender when he failed to hire plaintiff for the Procurement Analyst position. Plaintiff can defeat DOD's motion

on this claim either by proffering some direct evidence of discrimination or by using the McDonnell Douglas burden-shifting method of proof. Plaintiff attempts to do both.

As direct evidence of discrimination, plaintiff offers the affidavit of Stan Laber. Laber says that Wynne "[r]egularly claimed to be enthralled with women and preferred to be with, around, working for, and employing women. Given a choice of hiring a male or a female [Wynne] told me he would always hire a female unless he found her looks to be repulsive." (Pl.'s LR 56.1(b) Stmt., Ex. 6, Laber Aff. at 2.) Even if Wynne made those statements, they do not constitute direct evidence of discrimination in this case because they are not related to the employment decision plaintiff contests. Wynne allegedly made these comments in informal conversations with a colleague at least three, and possibly as many as six, years before Wynne rejected plaintiff for the Procurement Analyst job. (See id. ("I am aware of his preference for females based on conversations we had from 1991 to 1994.").) Such comments, even when they are made by the decision maker, are direct evidence of discrimination only if they are made "(1) around the time of, and (2) in reference to, the adverse employment action complained of." Hunt v. City of Markham, 219 F.3d 649, 652 (7th Cir. 2000). Because Wynne made these comments years before, not in reference to, the contested employment decision, they are not direct evidence of discrimination.

All is not lost for plaintiff, however. He can still raise an inference of discrimination by using the McDonnell Douglas burden-shifting method of proof. To do so, he must first establish a prima facie case of discrimination by showing that: (1) he is a member of a protected class; (2) he applied, and was qualified, for the position; (3) he was rejected; and (4) DOD hired someone outside the protected class. Flores v. Preferred Technical Group., 182 F.3d 512, 515 (7th Cir. 1999). Once established, the prima facie case creates a rebuttable presumption of discrimination. Chiaramonte

-5-

v. Fashion Bed Group, Ltd., 129 F.3d 391, 398 (7th Cir. 1997). The burden of production then shifts to DOD to articulate a legitimate, nondiscriminatory reason for the challenged employment decision. Id. If DOD carries its burden, the presumption of discrimination disappears and plaintiff must show that the proffered reason for the challenged employment decision is merely a pretext. Id.

The undisputed facts establish that plaintiff has made a prima facie case of gender discrimination. He is a member of a protected class, he applied, and was qualified, for the Procurement Analyst position and DOD awarded the job to woman. Thus, the burden of production shifts to DOD to articulate a legitimate nondiscriminatory reason for the hiring decision. Wynne claims that he hired Stephens, rather than plaintiff, because: (1) oral and written communication skills were essential to the Procurement Analyst position; (2) plaintiff had difficulty communicating effectively in writing, as evidenced by Wynne's numerous informal discussions and formal counseling with plaintiff on the subject; and (3) given plaintiff's communication difficulties, Wynne believed Stephens' oral and written communication skills were superior to plaintiff's. Plaintiff admits that the Procurement Analyst position required good oral and written communication skills. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 25.) But he contends that the second and third proffered reasons – that plaintiff had difficulty with written communications and because of those difficulties Stephens' skills were superior to his – are pretextual.

Viewed favorably to plaintiff, the record casts doubt on the veracity of the reasons Wynne offers for rejecting plaintiff. Though Wynne claims that he spoke to plaintiff many times about misspelled words and incomplete sentences in his letters, plaintiff denies that any such conversations took place. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 12.) Plaintiff's employment file, which states that Wynne counseled plaintiff only once, on April 7, 1997, about his written product, supports plaintiff's

claim. (Def.'s LR 56.1(a)(3) Stmt., Vol. II at 19.) Moreover, though the file says that Wynne counseled plaintiff both about the quality of his letters and his failure to use cover letters, plaintiff says the cover letter issue was the only one that Wynne addressed. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 15.)

Plaintiff's performance evaluations also undermine Wynne's story. Wynne claims to have had problems with plaintiff's work before 1997. (See Def.'s LR 56.1(a)(3) Stmt. ¶ 12 ("As of 1997, the problems in Powell's correspondence did not stop.").) Yet, he did not note any problems in plaintiff's performance evaluation for the period April 1, 1995 to March 31, 1996. (Pl.'s LR 56.1(b) Stmt., Ex. 11.) On the contrary, he gave plaintiff an overall rating of "Highly Successful," rated his preparation of outgoing correspondence as "Exceptional" and his responsiveness to inquiries as "Fully Successful." (Id.) Because of the change in the evaluation schedule, Wynne did not review plaintiff's performance for the period April 1, 1996 to December 31, 1996, but it is undisputed that plaintiff received two performance awards during that time. (Def.'s Resp. Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 72.) In short, viewed favorably to plaintiff, the record supports the inference that Wynne's proffered reason for choosing Stephens for the Procurement Analyst position – plaintiff's poor written work – is pretext.

To defeat this motion, however, plaintiff must show more than that Wynne lied about his reason for choosing Stephens. He must produce some evidence that discrimination was the real reason for Wynne's decision. Hicks v. St. Mary's Honor Ctr., 509 U.S. 502, 515 (1993) ("[A] reason cannot be proved to be a pretext *for discrimination* unless it is shown *both* that the reason was false *and* that discrimination was the real reason.") (internal quotation marks and citation omitted). As evidence of Wynne's bias against men, plaintiff offers: (1) Wynne's statement, as reported by Laber,

that he generally hired women over men (Pl.'s LR 56.1(b) Stmt., Ex. 6, Laber Aff. at 2); and (2) the affidavit of Patricia Nelson, in which she says that Wynne treated plaintiff more harshly than the women he supervised (id., Ex. 7, Nelson Aff.).

Remarks like the one Wynne allegedly made to Laber, "when considered in conjunction with other evidence, [can] support an inference of discriminatory intent" under the McDonnell Douglas method of proof, even though they are not direct evidence of such intent. Huff v. UARCO, Inc., 122 F.3d 374, 385 (7th Cir. 1998). The question is whether Wynne's statement, made at least three years before the decision plaintiff contests, is too remote to be probative of his intent. Though our court of appeals has held that such comments must be temporally related to the challenged employment decision to constitute direct evidence of discrimination, it has yet to decide whether that requirement applies in an indirect case as well. Cf. Indurante v. Local 705, Int'l Bhd. of Teamsters, 160 F.3d 364, 367 (7th Cir. 1998) (noting that anti-Italian remarks made 16 months before plaintiff's termination were "some evidence of pretext"). The First and Eighth Circuits, however, have held that it does. See Straughn v. Delta Airlines, Inc., 250 F.3d 23, 37 (1st Cir. 2001) (holding that remarks are not probative of pretext in "the absence of any discernible contextual or temporal relationship" between them and the contested employment decision); Simmons v. OCE-USA, 174 F.3d 913, 916 (8th Cir. 1999) ("Stray remarks that are remote in time do not support a finding of pretext for intentional . . . discrimination.") (internal quotation marks and citation omitted). We agree with those courts that remarks by the decision maker that evidence a generalized bias against a group, but were made years before the challenged decision, have little, if any, probative value on the issue of pretext. Assigning significance to such stale comments would risk transforming Title VII into a vehicle for punishing employers for their poor character rather than for their discriminatory conduct. Because Wynne's

statement to Laber occurred years before he passed plaintiff over for the Procurement Analyst position, it is not probative of pretext.

Even if Wynne's alleged preference for hiring women had some probative value, it would not be enough to warrant a trial. Any inference of gender discrimination that might arise from that comment would be vitiated by one crucial and undisputed fact: Wynne's first choice for the Procurement Analyst position was a man. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 33.) As plaintiff admits, Stephens only got the job because Sylvester Herring, the man Wynne selected for the position, declined the offer. (Id.) Thus, even if Wynne's remark is some evidence of pretext it does not, in view of the other evidence in the record, merit a trial.

That leaves Nelson's affidavit.[2] Though Nelson says a variety of negative things about Wynne, the only ones that arguably evidence bias are that "[w]omen seemed to have it easier than males working under . . .Wynne[]" and that Wynne would "say something" to plaintiff if he took long breaks, but would say nothing to women who did the same thing. (Pl.'s LR 56.1(b) Stmt., Ex. 7 at 1.) Neither of these statements suggests that Wynne was biased against males. The first statement, to the extent it refers to something other than break time, is too vague to support an inference of bias. The second suggests that Wynne monitored plaintiff's break time more closely than that of women employees, but it does not suggest that he did so because of plaintiff's gender. If there were evidence that Wynne closely monitored the breaks of all males employees, but not female employees, or that plaintiff was the only male employee that Wynne supervised, Nelson's

---

[2]DOD has asked us to strike Nelson's affidavit because it contains observations not based on her personal knowledge. The only information that is pertinent to this case, Nelson's perception that Wynne treated women better than men, at least with respect to breaks, is based on her personal observations of the office. (See Pl.'s LR 56.1(b) Stmt., Ex. 7 at 2 (stating that Nelson worked for Wynne from May 1997 through January 1998).) DOD's request is, therefore, denied.

observation might support an inference of bias. Because there are no such facts in the record, however, Nelson's affidavit sheds no light on Wynne's intent.

We turn now to plaintiff's retaliation claims. Once again, plaintiff can defeat DOD's motion either by presenting direct evidence of retaliation or by satisfying the burden-shifting method of proof. Under the latter method, plaintiff must first make out a prima facie case by showing that: "(1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected expression and the adverse action." Lalvani v. Cook County, No. 00-1603, 2001 WL 1230782, at *4 (7th Cir. Oct. 15, 2001). If he does so, the burden shifts to DOD to articulate a legitimate reason for the adverse employment action. Id. Once DOD articulates a legitimate reason for the decision, the burden shifts back to plaintiff to show that the proffered reason is merely a pretext. Id.

In his first retaliation claim, plaintiff alleges that Wynne gave him a poor performance rating for 1997 in retaliation for his February 18, 1998 EEO complaint about not having been hired for the Procurement Analyst position. As direct evidence of retaliation, plaintiff offers Wynne's statement that if plaintiff complained about the 1997 rating, his next one would be lower. Though this comment suggests that Wynne might retaliate against plaintiff in the future, it does not suggest that the 1997 rating itself was retaliatory. It does not, therefore, constitute direct evidence of retaliation.

Because plaintiff has no direct evidence of retaliation, he must satisfy the burden-shifting method of proof if he is to defeat DOD's motion on this claim. Having filed an EEO complaint, plaintiff meets the first element of the prima facie case. DOD contends that he cannot meet the second element because an unfavorable evaluation, without more, does not constitute an adverse employment action. Even if it did, however, plaintiff's claim would still fail because he has no

-10-

evidence to suggest that his EEO complaint and his 1997 performance rating are causally related. Though plaintiff received the rating in March 1998, there is no dispute that Wynne prepared it no later than February 17, 1998 – one day *before* plaintiff filed his EEO complaint. (See Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 19[3]; Def.'s LR 56.1(a)(3) Stmt., Vol. II at 31.) Because Wynne prepared the rating before plaintiff engaged in any EEO activity, any inference that the rating was retaliatory is destroyed. DOD's motion for summary judgment on this claim is, therefore, granted.

Plaintiff's next claim is that Wynne retaliated against him for his first two EEO complaints by denying him "a previously approved reassignment to Northrup Grumman." (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 84.) There are two problems with this claim. The first is that it is not factually correct. Read favorably to plaintiff, the record suggests that plaintiff's transfer was delayed for a month, not that it was denied. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶¶ 50-51.) The second problem is that a delay in receiving a transfer is not an adverse employment action. See, e.g., Crady v. Liberty Nat'l Bank & Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993) (an adverse employment action "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits [or] significantly diminished material responsibilities"). Because there is no evidence that the delay in plaintiff's transfer caused him to lose any pay, benefits or job responsibilities, it is not an adverse employment action. Thus, even if Wynne delayed plaintiff's transfer to Northrup Grumman, he did not violate Title VII by doing so.

Plaintiff fares no better with his last retaliation claim. Plaintiff asserts in his fact statement that Wynne physically assaulted him in June 1998 in retaliation for plaintiff's EEO complaints. (See Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 84.) As support for that statement he cites an affidavit he prepared

---

[3]See n.1.

in May 1999. (Id.) That affidavit, however, is contradicted by two previous statements plaintiff gave about the alleged assault. In June 1998, plaintiff told Maurice Petterson, who was one of Wynne's supervisors, that:

> [Wynne] had approached [plaintiff's] desk to review a schedule/calendar on the desk. In accomplishing the review [Wynne] leaned over [plaintiff]. [Plaintiff] felt uncomfortable with this proximity and stood up abruptly – bumping into [Wynne] in the process.

(Def.'s LR 56.1(a)(3) Stmt., Vol. II at 24.) At about the same time, plaintiff gave a sworn statement to the police in which he said:

> Mr. Wynne was leaning all over me. . . . [H]e had a threatening look as if he was going to hit me. . . . I began to move backwards. Mr. Wynne continued to move in on me . As I continued to move backward to stand up he kept coming forward. I then took one last step backwards and stood up. *Contact was initiated* . . . .

(Id. at 63) (emphasis added). Plaintiff has made no attempt to explain the inconsistency between his 1998 statements and his 1999 affidavit. Absent an explanation, his affidavit cannot create a genuine issue for trial. Lee v. City of Salem, 259 F.3d 667, 674 (7th Cir. 2001) (plaintiff cannot defeat summary judgment by making an assertion that contradicts a prior sworn statement unless he "confront[s] and reconcile[s] the apparent inconsistency" between the two).

## Conclusion

For the reasons set forth above, there is no genuine issue of material fact on the Title VII claims of gender discrimination and retaliation that plaintiff asserts against defendant. Defendant's motion for summary judgment is, therefore, granted. This is a final and appealable order.

**ENTER:**

_____
**UNITED STATES DISTRICT JUDGE**

DATED: 11-14-01